Laird C. CLEAVER, Plaintiff-Appellant, †

v.

Wisconsin DEPARTMENT OF REVENUE,
Defendant-Respondent.

Court of Appeals

*No. 88–1913. Submitted on briefs May 8, 1989.—Decided
August 24, 1989.*

(Also reported in 447 N.W.2d 102.)

† Petition to review granted.

On behalf of the plaintiff-appellant, there were briefs by *Joseph C. Niebler,* of *Niebler & Muren, S.C.,* of Brookfield.

On behalf of the defendant-respondent, there was a brief by *Donald J. Hanaway,* attorney general, and *Edward S. Marion,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   Laird C. Cleaver appeals from a judgment affirming the decision of the state tax appeals commission which affirmed the department of revenue's denial of his income tax refund claim. His claim arises out of an alleged overpayment of income tax on the gain he realized when he made a "net gift" to the Laird C. Cleaver Issue Trust. We conclude that he is not entitled to the claimed refund and affirm the judgment.

In December 1976 Cleaver transferred 25,000 shares of Coca Cola Company common stock to the Laird C.

Cleaver Issue Trust. The transfer required the trustees to pay any gift tax on the transfer. In 1977 the trustees paid federal and state gift taxes on the transfer. In 1981 the Internal Revenue Service assessed Cleaver income tax on the amount by which the gift taxes exceeded Cleaver's basis in the stock. Cleaver appealed the assessment to the tax court. In *Diedrich v. Commissioner,* 457 U.S. 191 (1982), the Court, in an unrelated case, held that when the donee pays the gift tax on gifted property, the donor realizes a taxable gain to the extent that the gift tax exceeds the donor's basis in the property. In December 1982 Cleaver settled the IRS's claim. He also filed an amended Wisconsin income tax return pursuant to sec. 71.11(21m), Stats. (1977),[1] and paid additional Wisconsin income taxes on the gain he realized from the gift to the Trust.

On July 18, 1984 the Deficit Reduction Act of 1984 became effective. Pub. L. No. 98–369, 98 Stat. 494 (1984). Section 1026(a) of the Act provides:

> In the case of any transfer of property subject to gift tax made before March 4, 1981,[2] for purposes of subtitle A of the Internal Revenue Code of 1954,

---

[1] Section 71.11(21m), Stats. (1977), provides:

If the amount of taxable income for any year of any taxpayer as reported to the internal revenue service is changed or corrected by the internal revenue service or other office of the United States, such taxpayer shall report such changes or corrected income to the department within 90 days after its final determination and shall concede the accuracy of such determination or state how the determination is erroneous. Such changes or corrections need not be reported unless they affect the amount of income reportable or tax payable under this chapter.

[2] March 4, 1981 was the date of the court of appeals' decision which held that the donors in *Diedrich* were required to recognize income from the gifts involved.

gross income of the donor shall not include any amount attributable to the donee's payment of . . . any gift tax imposed with respect to such gift.

After the Deficit Reduction Act went into effect, Cleaver obtained a refund of the federal income taxes he had paid as a result of his gift. His claim for a refund of the Wisconsin income taxes paid on the gift was denied by the department. The tax appeals commission affirmed the department and the trial court affirmed the commission's decision.

Whether Cleaver is entitled to his claimed refund requires construction of secs. 71.02(2)(a),[3] 71.02(2)(b)3,[4] and 71.02(2)(e),[5] Stats. (1977), in relation to sec. 1026 of the Deficit Reduction Act. The application of a statute to a factual situation is a question of law which we resolve without deferring to the trial court's reasoning or conclusions. *Thimm v. Automatic Sprinkler Corp.*, 148 Wis. 2d 332, 335, 434 N.W.2d 842, 843 (Ct. App. 1988).

Cleaver contends that sec. 1026 of the Deficit Reduction Act unambiguously excludes from federal gross income any amount attributable to the donee's

[3] Section 71.02(2)(a), Stats. (1977), provides in part:

"Federal taxable income" and "federal adjusted gross income" of natural persons and fiduciaries, mean taxable income or adjusted gross income as determined under the internal revenue code . . ..

[4] Section 71.02(2)(b)3, Stats. (1977), provides in part:

For the taxable year 1977 "internal revenue code" means the federal internal revenue code in effect on December 31, 1976 . . .. Amendments to the internal revenue code enacted after December 31, 1976, shall not apply . . . with respect to the taxable year 1977.

[5] Section 71.02(2)(e), Stats. (1977), provides:

"Wisconsin adjusted gross income" means federal adjusted gross income, with the modifications prescribed in s. 71.05(1) and (4).

payment of any gift tax on a transfer made before March 4, 1981. Because sec. 71.02(2)(e), Stats. (1977), defines "Wisconsin adjusted gross income" to mean "federal adjusted gross income," with immaterial exceptions, it follows, Cleaver argues, that his 1977 Wisconsin adjusted gross income did not include the gain he realized on the gift tax paid by the trustees.

The department sees sec. 1026 of the Deficit Reduction Act in a different light. It contends that sec. 1026 had no effect on Wisconsin law because it did not amend the Internal Revenue Code. It emphasizes sec. 71.02(2)(a), Stats. (1977), which provides that " '[f]ederal adjusted gross income' . . . mean[s] . . . adjusted gross income *as determined under the internal revenue code.*" (Emphasis added.) It argues that sec. 1026 is a "non-statutory" act which is not reflected in the Internal Revenue Code and therefore does not determine gross income under the Code.

The department's construction of sec. 71.02(2)(a), Stats. (1977), is too literal. Its construction would give no effect to decisions of the United States Supreme Court interpreting sec. 61(a) of the Internal Revenue Code (26 U.S.C. sec. 61(a)) unless that interpretation was written into the Code. It would render its own rule, Wis. Adm. Code, sec. Tax 1.06,[6] a nullity unless the United States Treasury interpretive regulations were written into the Code. We give sec. 71.02(2)(a) a broader

---

[6] Wisconsin Adm. Code, sec. Tax 1.06 provides:

To the extent that any provision of the internal revenue code has application in the determination of Wisconsin taxable income, Wisconsin income tax or Wisconsin minimum tax of persons other than corporations, any United States treasury regulation interpreting the provision shall be deemed a tax rule of the Wisconsin Administrative Code.

construction and conclude that sec. 1026 of the Deficit Reduction Act, because it affected the definition of gross income under sec. 61(a) of the Internal Revenue Code, "determined" federal gross income "under the internal revenue code."

The result in this case hinges on whether sec. 1026 of the Deficit Reduction Act was an "amendment" to the Internal Revenue Code within the meaning of sec. 71.02(2)(b)3, Stats. (1977), which provides: "Amendments to the internal revenue code enacted after December 31, 1976, shall not apply to this subsection with respect to the taxable year 1977."

As the department notes, the definition of federal gross income in sec. 61(a) of the Internal Revenue Code was unchanged by sec. 1026 of the Deficit Reduction Act. Under a literal interpretation of sec. 71.02(2)(b)3, Stats. (1977), sec. 1026 did not amend the Internal Revenue Code. It did, however, affect the Internal Revenue Code in that it declared how gross income shall be defined for federal tax purposes. Congress acquiesced in the *Diedrich* court's interpretation of federal gross income post-March 4, 1981, but declared that prior to March 4, 1981, federal gross income should not include a taxpayer's gain on a "net gift." Congress acted as it did because several courts had ruled that the transfer of property subject to the transferee paying any gift tax did not result in any gain to the transferor, *see Diedrich,* 457 U.S. at 194, and congress believed that taxpayers should not be adversely affected because they made gifts in reliance on what they believed was established law.[7]

---

[7] The House Ways and Means Committee stated that the reason for enacting sec. 1026 of the Deficit Reduction Act was as follows:

> Prior to the *Diedrich* decision, several courts had ruled that the transfer of property subject to the transferee paying any gift tax did

■

We conclude that secs. 71.02(2)(a), 71.02(2)(b)3 and 71.02(2)(e), Stats. (1977), are ambiguous and do not answer our inquiry. We resort to the legislative history when we are faced with ambiguous statutes. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985).

We find that there are conflicting indications as to the meaning of secs. 71.02(2)(a), 71.02(2)(b)3 and 71.02(2)(e), Stats. (1977). Cleaver relies on *Krueger v. Department of Revenue,* 124 Wis. 2d 453, 457, 369 N.W.2d 691, 693 (1985), where the court said:

> We find that in adopting a definition of state income to mean the same as federal income, the legislature intended that the federal definition of income be applicable *as it is interpreted and modified.* In other words, what constitutes income for Wisconsin purposes changes as the federal standard evolves. [Emphasis added.]

The court's language can be construed as a finding that the legislature intended to adopt the federal definition of gross income regardless of how the definition was modified.

On the other hand, the legislative history of the federalization of the Wisconsin income tax law reveals that the legislature did not intend to adopt by incorporation future amendments to the Internal Revenue Code.

not result in any amount realized by the transferor. *While the committee believes that the Diedrich decision is correct, it also believes that taxpayers should not be adversely affected because they may have made such transfers in reliance upon what was thought to be established law* that no income tax liabilities would accrue from such transfers. [Footnote omitted; emphasis added.]

H. Rep. No. 98–432, Part II, 98th Cong., 2nd session 1707, *reprinted in* 1984 U.S. Code Cong. & Admin. News 1328, 1329.

In 1961, in response to an inquiry from the state Senate, the attorney general opined that the following provision of a proposed bill to federalize the state income tax law violated Wis. Const. art. IV, sec. 1.[8] "Any reference herein to particular provisions of the internal revenue code of 1945 shall be deemed to include subsequent amendments thereto." 50 Op. Att'y Gen. 107, 108 (1961).

The legislature has met the possible constitutional problem arising from incorporating into Wisconsin tax law future acts of congress amending the Internal Revenue Code by periodic updating of Wisconsin's reference to the Internal Revenue Code. *See* 66 Op. Att'y Gen. 331 (1977).

We resolve the conflict as to the legislative intent by concluding that the legislature did not intend "internal revenue code," for the taxable year 1977, to include acts of congress enacted after December 31, 1976, whose substantive effect was to amend the Code. The legislative history of the federalization of the Wisconsin income tax law establishes that the legislature sought the advice of the attorney general as to whether it could incorporate by reference future amendments by the congress of the Internal Revenue Code. The care which the legislature has taken to avoid incorporating by reference future enactments of congress convinces us that the legislature intended that secs. 71.02(2)(a), 71.02(2)(b)3, and 71.02(2)(e), Stats. (1977), do not incorporate by reference future acts of congress whose substantive effect is to amend the Internal Revenue Code. Because sec. 1026 of the Deficit Reduction Act had the substantive effect of amending the federal definition of gross income under sec. 61(a) of the Internal Revenue Code, it was made

---

[8] Wisconsin Const. art. IV., sec. 1 provides that "[t]he legislative power shall be vested in a senate and assembly."

inapplicable to Wisconsin by sec. 71.02(2)(b)3, Stats. (1977).

*By the Court.*—Judgment affirmed.