Laird C. CLEAVER, Plaintiff-Appellant-Petitioner,

v.

Wisconsin DEPARTMENT OF REVENUE,
Defendant-Respondent.

Supreme Court

*No. 88–1913. Argued September 4, 1990.—Decided December
12, 1990.*

(Also reported in 463 N.W.2d 349.)

For the plaintiff-appellant-petitioner there was a brief by *Joseph C. Niebler* and *Niebler & Muren, S.C.*, Brookfield and oral argument by *Joseph C. Niebler.*

For the defendant-respondent the cause was argued by *Edward S. Marion,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

WILLIAM A. BABLITCH, J. The petitioner, Laird C. Cleaver (Cleaver), seeks review of a court of appeals' decision denying Cleaver's claim for a state income tax refund for the taxable year 1977. Cleaver claims that a 1984 congressional act, which redefined federal gross income to exclude "net gift" transfers made before March 4, 1981, affects the computation of his 1977 Wisconsin income tax. The Wisconsin statutes define Wisconsin taxable income for a given year as meaning federal taxable income as determined under the Internal Revenue Code in effect on December 31 of the previous year. Wisconsin taxable income for 1977 is determined by reference to the Internal Revenue Code as fixed on December 31, 1976. The Internal Revenue Code as it existed on that date, as interpreted by the U.S. Supreme Court in *Diedrich v. Commissioner,* 457 U.S. 191 (1982), provides that "net gift" transfers are taxable income. The subsequent 1984 congressional act which

effectively excluded "net gift" transfers from 1977 federal gross income was not a part of the Internal Revenue Code as of December 31, 1976, and therefore did not affect Cleaver's responsibility for payment of the tax. Accordingly, we affirm.

The parties have stipulated to the facts in this case and this stipulation constitutes the entire record on appeal. On December 17, 1976, Wisconsin resident Laird Cleaver established the Laird C. Cleaver Issue Trust (Trust) by irrevocably transferring 25,000 shares of Coca Cola Company common stock valued at $1,895,312.50. A letter agreement between Cleaver and the trustees specified that the Trust would be responsible for paying the gift taxes on the transfer.

At the time Cleaver established the Trust, federal court of appeals' decisions in the fifth and sixth circuits held that a "net gift" transfer, such as that made by Cleaver, could not be taxed as income of the donor. *Estate of Kenneth W. Davis v. Commissioner,* 469 F.2d 694 (5th Cir. 1972); *Turner v. Commissioner,* 410 F.2d 752 (6th Cir. 1969). On March 4, 1981, however, the eighth circuit in *Diedrich v. Commissioner,* 643 F.2d 499, 503–04 (1981), adopted the Internal Revenue Service's view that such transfers, because they constructively provide income by discharging a debt of the donor, are taxable to the extent of the difference between the gift taxes paid and the basis in the property transferred. *Diedrich* was affirmed by the United States Supreme Court. 457 U.S. 191 (1982).

The Supreme Court's *Diedrich* decision made Cleaver liable for 1977 federal and state income taxes on the debt he had discharged to the Trust. Cleaver remitted the amount due to the IRS and filed an amended Wisconsin income tax return pursuant to sec.

71.11(21m), Stats. 1977[1] [All references in this opinion are to the 1977 statutes unless otherwise indicated.] Cleaver's amended Wisconsin tax return included an additional $431,566 of taxable income.

In 1984, the Deficit Reduction Act of 1984, Pub. L. No. 98–369, sec. 1026, 98 Stat. 1031 (1984) (DRA) went into effect.[2] Section 1026 of the DRA is a non-Internal Revenue Code provision of the DRA which excludes net gifts made prior to the eighth circuit's *Diedrich* decision from the definition of gross income. Pursuant to section 1026 of the DRA, Cleaver received a refund from the IRS.

On August 1, 1984, Cleaver filed a second amended Wisconsin tax return under sec 71.11(21m), Stats., seeking a Wisconsin income tax refund. By a letter dated September 20, 1984, the Wisconsin Department of Revenue (Department) denied his claim on the basis that sec. 1026 had not been adopted as part of the Wisconsin statutes. After the Department also denied Cleaver's petition for redetermination, he appealed to the Tax Appeals Commission (TAC).

---

[1] **71.11(21m) Internal Revenue Service Adjustments and Amended Returns.** If the amount of taxable income for any year of any taxpayer as reported to the internal revenue service is changed or corrected by the internal revenue service or other officer of the United States, such taxpayer shall report such changes or corrected income to the department within 90 days after its final determination and shall concede the accuracy of such determination or state how the determination is erroneous. Such changes or corrections need not be reported unless they affect the amount of income reportable or tax payable under this chapter.

[2] *Section 1026. NO GAIN RECOGNIZED FROM NET GIFTS MADE BEFORE MARCH 4, 1981.*
(a) In General.—In the case of any transfer of property subject to gift tax made before March 4, 1981, for purposes of subtitle A of the Internal Revenue Code of 1954, gross income of the donor shall not include any amount attributable to the donee's payment of (or agreement to pay) any gift tax imposed with respect to such gift.

The TAC affirmed the Department's decision and the TAC's decision was in turn affirmed by the circuit court. The circuit court's decision was affirmed by the court of appeals which concluded that although the Wisconsin tax statutes were ambiguous, the legislature intended to make post-1976 congressional acts inapplicable to the Wisconsin statutes because they had the "substantive effect" of amending the Code. *Cleaver v. Department of Revenue,* 151 Wis. 2d 896, 447 N.W.2d 102 (Ct. App. 1989). This court granted Cleaver's petition for review.

·The issue in this case is, whether sec. 1026 of the DRA enacted in 1984 affects the computation of Wisconsin adjusted gross income for tax year 1977 under secs. 71.02(2)(a),[3] 71.02(2)(b)3,[4] and 71.02(2)(e),[5] Stats. The construction of a statute or the application of a statute to a particular set of facts is a question of law which this court reviews without deference to the lower courts' determination. *Sheely v. DHSS,* 150 Wis. 2d 320, 328, 442 N.W.2d 1 (1989).

Section 71.02(2)(e), Stats., states that " 'Wisconsin adjusted gross income' means federal adjusted gross income . . .." Cleaver argues that the state and federal

---

[3] **71.02(2)(a)** 'Federal taxable income' and 'federal adjusted gross income' of natural persons and fiduciaries, mean taxable income or adjusted gross income as determined under the internal revenue code . . ..

[4] **71.02(2)(b)3** For the taxable year 1977 'internal revenue code' means the federal internal revenue code in effect on December 31, 1976 . . .. Amendments to the internal revenue code enacted after December 31, 1976 shall not apply . . . with respect to the taxable year 1977.'

[5] **71.02(2)(e)** 'Wisconsin adjusted gross income' means federal adjusted gross income, with the modifications prescribed in s. 71.05(1) and (4).

definitions of adjusted gross income are, therefore, coextensive unless the exception stated in sec. 71.02(2)(b)3, that post-1976 amendments do not apply for the taxable year 1977, specifically applies. The petitioner relies heavily on this court's decision in *Krueger v. Department of Revenue,* 124 Wis. 2d 453, 369 N.W.2d 691 (1985), in which we determined that this court's interpretations of definitions in the state's tax statutes are to be guided by the Internal Revenue Code interpretations of the federal courts.

In *Krueger,* we stated:

> We find that in adopting a definition of state income to mean the same as federal income, the legislature intended that the federal definition of income be applicable as it is interpreted and modified. In other words, what constitutes income for Wisconsin purposes changes as the federal standard evolves . . ..

> * * * *

> The legislature did not merely adopt the definition of taxable income as it appeared in the Internal Revenue Code, but rather stated that Wisconsin adjusted gross income means federal adjusted gross income. In so doing, the legislature adopted a standard for state income tax purposes that requires modification as the federal definition of income receives modification. 124 Wis. 2d at 457–58.

The petitioner asserts that sec. 1026 of the DRA modifies the federal definition of income and is, therefore, applicable to Wisconsin's definition of income under the language of *Krueger.*

This court finds that the plain language of secs. 71.02(2)(a), 71.02(2)(e), and 71.02(2)(b)3, Stats., estab-

739

lishes that the petitioner's Wisconsin adjusted gross income for 1977 is determined solely by looking to the Internal Revenue Code as it stood on December 31, 1976. Because sec. 1026 of the DRA was not in effect on December 31, 1976, it did not affect Cleaver's responsibility for payment of the tax.

When statutory language is clear and unambiguous " 'no judicial rule of construction is permitted . . .' " and the court must give " 'the language its ordinary and accepted meaning.' " *National Amusement Co. v. Dept. of Revenue,* 41 Wis. 2d 261, 266, 163 N.W.2d 625, 628 (1969) (citation omitted). Read together, secs. 71.02(2)(a), 71.02(2)(b)3, and 71.02(2)(e), Stats., clearly establish that for tax year 1977, a person's Wisconsin adjusted gross income is determined *under the Internal Revenue Code* as it existed at the end of calendar year 1976. The plain language of the statute excludes consideration of sec. 1026 of the DRA because that section was not part of the Internal Revenue Code as of December 31, 1976. The fact that the legislature chose to emphasize the obvious in sec. 71.02(2)(b), by stating that future amendments to the Code do not apply, does not create any ambiguity in the reading of the statute.

Nor does this court's decision in *Krueger* alter the application of the plain language of secs. 71.02(2)(a), 71.02(2)(b)3, and 71.02(2)(e), Stats. In *Krueger,* we concluded that the legislature intended the federal definition of income to be applicable as it is interpreted and modified. *Krueger,* 124 Wis. 2d at 457. The petitioner's view that the language in *Krueger* applies to congressional acts is incorrect. There is a clear distinction between the federal court and agency decisions that foster the evolution of definitions in the Code and congressional acts which create new definitions. Tax Appeals Commis-

sioner Douglas Bartley's concurring opinion in this case places *Krueger* in its proper perspective and illuminates the purpose of sec. 71.02(2)(b)3:

> The evolution of federal tax law *Krueger* refers to is judicial and administrative evolution—the gradual evolution of law that comes from interpretation of statutory law and not any abrupt change in the law itself. To read *Krueger* in the expansive manner urged by petitioner would be to ignore the explicit words of our statute—a statute that operates as sort of an annual Wisconsin permafrost encasing a year's settled law and freezing out congressional tax tinkering. And to suggest, as petitioner does, that a federal non-code provision can change our law, while admitting that a federal code provision can't, strikes me as a bit disingenuous.

As Commissioner Bartley recognized, the Wisconsin tax statutes operate to allow the legislature to consider Code amendments and congressional acts affecting federal tax law before incorporating them into Wisconsin tax law. The legislature frequently updates the statutes so that the tax law for each tax year is fixed by the Internal Revenue Code as it stood on December 31 of the previous year. *See, e.g.,* sec. 71.02(2)(d)1–12, Stats. (1985–86).[6] Furthermore, the fact that sec. 71.02(2)(b)3

---

[6]The legislature apparently structured the statutes in this fashion in response to an attorney general opinion which advised that the "attempted incorporation by reference of future federal statutes would constitute an unlawful delegation of legislative power." 50 Op. Att'y. Gen. 107, 113 (1961). *See also* 66 Op. Att'y. Gen. 331 (1977) (discussing how the tax statutes operate to avoid the delegation of powers problem and noting that "periodic updating and strict scrutiny by the state Legislature of the federal internal revenue code . . . may result in the adoption of differences between the federal and state tax systems, inconsistent with

includes a section of the Code concerning the deduction of child care expenses that had been repealed by Congress and excludes a section of the Code relating to the tax treatment of certain pollution control facilities, demonstrates that the legislature will not simply rubber stamp congressional changes in federal tax law. The legislature quite obviously desires the opportunity to review any changes enacted by Congress before such changes become part of Wisconsin tax law.

It may be argued that this decision harshly penalizes the taxpayer for his reliance upon the established decisions of other federal circuits. Nevertheless, the statute is clear that congressional acts which are not reflected in the Internal Revenue Code as of a fixed date have no effect on the definition of Wisconsin income. To the extent Congress perceived the *Diedrich* decision as having an inequitable impact on those taxpayers who relied upon the decisions of the other circuits, it acted to remedy the situation. To the extent the Wisconsin legislature perceives this decision as producing an inequitable result, it too may act.

*By the Court.*—The decision of the court of appeals is affirmed.

---

the objectives of 'simplification,' but apparently in response to more compelling policy considerations." *Id.* at 333–34.)