FARM CREDIT BANK OF ST. PAUL, formerly the Federal Land Bank of St. Paul, a federally chartered corp., Plaintiff-Respondent,

v.

F&A DAIRY, Defendant-Appellant.†

Court of Appeals

*No. 91-1214. Submitted on briefs September 23, 1991.—Decided October 29, 1991.*

(Also reported in 477 N.W.2d 357.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Don Paul Novitzke* of *Novitzke & Gust* of Amery.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Edward J. Coe* of *Coe, Dalrymple, Heathman, Coe & Zabel, S.C.,* of Rice Lake.

CANE, P.J.   F&A Dairy (the dairy) appeals a judgment in favor of Farm Credit Bank of St. Paul for conversion of secured farm property. The dairy raises four issues on appeal: (1) The trial court erred by basing its decision on sec. 409.307, Stats., in contravention of 7 U.S.C. § 1631 (1988), which the dairy claims preempts state law; (2) the dairy took free and clear of the bank's security interest because the bank did not meet the notice requirements of § 1631; (3) the bank was not in possession or entitled to immediate possession of the secured property and, thus, could not maintain an action for conversion; and (4) the trial court's decision was unfair, inequitable and contrary to the policy behind § 1631.

We conclude that § 1631 preempts state law, the bank met the requirements of § 1631 with respect to the September, October and November milk sales and the bank can recover on its action for conversion because it was entitled to immediate possession of the secured property. We further conclude that the dairy purchased the August milk sales free of the bank's security interest under § 1631 because notice had not been given prior to those sales. The judgment is affirmed in part, reversed in part and cause remanded with directions.

John and Barbara Bonneprise own and operate a dairy farm. The Bonneprises borrowed $300,000 from Farm Credit Bank of St. Paul. As collateral for the loan, the bank obtained and perfected a security interest cov-

ering the Bonneprises' milk and all accounts arising from the sale or other disposition of their milk and milk products. The Bonneprises were selling milk to Land O' Lakes Dairy. In return for waiver of its lien, the bank executed an assignment with Land O' Lakes and the Bonneprises whereby Land O' Lakes would pay the bank $4,333 per month from the Bonneprises' milk proceeds.

In August 1988, the Bonneprises switched dairies and began selling their milk to F&A Dairy. After the bank received no payment in August, it found out that the Bonneprises had switched dairies. The Bonneprises refused to make an assignment directing the dairy to make payments to the bank. By letter dated August 22, 1988, the bank notified the dairy of its previous assignment with Land O' Lakes and demanded payments of $4,333 in accordance with the assignment. Also, the bank enclosed a copy of the assignment, a product lien notification statement and a copy of its financing statement filed in accordance with the U.C.C. Four days later, the bank notified the dairy of its perfected security interest in the Bonneprises' milk and all accounts arising from the sale or other disposition of their milk and milk products and enclosed a copy of the security agreement.

The dairy refused to pay the bank $4,333 per month for milk sales during August, September, October and November.[1] The reasons it gave for not paying the bank were that there was no assignment between the bank, the Bonneprises and the dairy, and that John Bonneprise directed it to pay him and not the bank. Each of these months' sales to the dairy exceeded $4,333.

The trial court found that the bank had an effective perfected security interest covering the sale of the Bonneprises' milk to the dairy. It also found that the Bon-

---

[1] The milk sales from December 1988 and following are not in issue because they were placed in escrow.

364

neprises defaulted on their payments to the bank in August 1988, and, therefore, the bank was entitled to immediate possession of the secured property. The trial court concluded that the dairy bought the Bonneprises' milk subject to the bank's security interest under § 1631 because the bank met the § 1631 notice requirements. It further concluded that the dairy was guilty of converting the sum of $4,333 per month during September, October, November and December (constituting proceeds from the August, September, October and November milk sales), totaling $17,332. The trial court entered judgment in that amount plus 5% interest from the date of conversion to the date of judgment, and costs.

## PREEMPTION

We first address whether § 1631 preempts sec. 409.307, Stats., for the purpose of determining whether a buyer of farm products takes subject to or free and clear of a perfected security interest. Statutory construction is a question of law that we review without deference to the trial court's decision. *Gonzalez v. Teskey,* 160 Wis. 2d 1, 7-8, 465 N.W.2d 525, 528 (Ct. App. 1990). The dairy argues that although the trial court's decision refers to § 1631, it was based on sec. 409.307 and, therefore, was in error because § 1631 preempts sec. 409.307. A federal regulation preempts a state regulation where the clear and manifest purpose of Congress is to supersede state authority. *Krueger v. Mitchell,* 112 Wis. 2d 88, 93, 332 N.W.2d 733, 736 (1983). Additionally, "[w]hen a federal statute unambiguously precludes certain types of state legislation, we need go no further than the statutory language to determine whether the state statute is preempted." *Exxon Corp. v. Hunt,* 475 U.S. 355, 362 (1986).

The state law is found at sec. 409.307, Stats., which provides in part:

> (1)   A buyer in ordinary course of business as defined in s. 401.201(9) *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his or her seller even though the security interest is perfected and even though the buyer knows of its existence. (Emphasis added.)

Known as the "farm products exception" adopted from the U.C.C., sec. 409.307 allows a buyer in the ordinary course of business to take free and clear of any perfected security interests in the product he is purchasing unless that product is a farm product purchased from a person engaged in farming operations.

7 U.S.C. § 1631 states in part:

> (a)   Congressional findings
> Congress finds that—
> (1)   certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products . . ..
> (2)   these laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender;
> (3)   the exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products; and
> (4)   this exposure constitutes a burden on and an obstruction to interstate commerce in farm products.
> (b)   Declaration of purpose

The purpose of this section is to remove such burden on and obstruction to interstate commerce in farm products.

. . .

(d)  Purchases free of security interest

*Except as provided in subsection (e) of this section* [setting forth when a buyer of farm products takes subject to a security interest] *and notwithstanding any other provision of Federal, State, or local law,* a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest. (Emphasis added).

██

In § 1631, Congress expressed a clear and manifest purpose to supersede state regulations creating farm product exceptions. Furthermore, the language "notwithstanding any other provision of Federal, State, or local law" unambiguously precludes State regulation governing whether a purchaser of farm products takes clear or subject to a security interest. Therefore, when a sale involves farm products, § 1631 determines whether the buyer takes free or subject to a lender's security interest. Thus, we conclude that § 1631 preempts sec. 409.307, Stats.

## APPLICATION OF 7 U.S.C. § 1631

██

Next, we address whether the dairy purchased the Bonneprises' milk subject to or free of the bank's security interest, under § 1631. The application of a statute to a particular set of facts is a question of law that we review de novo. *Cleaver v. DOR,* 158 Wis. 2d 734, 738, 463 N.W.2d 349, 351 (1990).

Section 1631(d) provides that a buyer of farm products takes free of a security interest except as provided in § 1631(e). Subsection 1631(e) provides in part:

(e)  Purchases subject to security interest

A buyer of farm products takes subject to a security interest created by the seller if—

(1)(A)  within 1 year before the sale of the farm products, the buyer has received from the secured party . . . written notice of the security interest organized according to farm products that—

(i)  is an original or reproduced copy thereof;

(ii)  contains,

(I)  the name and address of the secured party;

(II)  the name and address of the person indebted to the secured party;

(III)  the social security number of the debtor . . ..

(IV)  a description of the farm products subject to the security interest created by the debtor . . .; and

. . .

(v)  [contains] any payment obligations imposed on the buyer by the secured party as conditions for waiver or release of the security interest; and

(B)  the buyer has failed to perform the payment obligations . . .. (Footnote omitted.)

If the bank has met the § 1631(e) notice requirements, including notice of any payment obligation, and the dairy failed to perform the payment obligations, it purchased the milk from the Bonneprises subject to the bank's security interest.

Here, the bank sent letters and documents to the dairy containing a copy of the security agreement creat-

ing the security interest in the milk and accounts from its sale, the bank's name and address, the Bonneprises' names and address, John Bonneprises' social security number and a reasonable description of the secured property and where it was located. It also demanded the monthly sum of $4,333.

The dairy argues that the bank did not meet the "payment obligation" notice requirement because its payment obligation was ambiguous. We disagree. Under its perfected security interest and by giving proper notice under § 1631(e), the bank was entitled to receive all proceeds from the sale of the Bonneprises' milk, not merely the payment amount of $4,333. *See Miracle Feeds, Inc. v. Attica Dairy Farm,* 129 Wis. 2d 377, 385 N.W.2d 208 (Ct. App. 1986). The requirement of giving notice of "*any* payment obligations" is merely to allow the bank, if it wishes, to accept a lesser amount of milk sale proceeds and to waive its lien for the balance of the proceeds. The bank's documents and letters sent to the dairy provide sufficient notice that it had a lien on the Bonneprises' milk and proceeds from its sale, and that it demanded payment of $4,333 per month as a waiver of its lien.

The dairy also argues that the bank's payment obligation notice required an assignment from the Bonneprises directing it to pay a specific amount to the bank because the lien notification statement sent to the dairy referred to such an assignment. It further argues that because there was no such assignment, the notice requirements of § 1631(e) are not met and it therefore takes free of the bank's security interest.

Subsection (e) does not require an assignment to be filed with the buyer. Although the bank's lien notification statement arguably requires such an assignment,

the lack of an assignment does not allow the dairy to take free of the bank's security interest. If we were to view only the lien notification statement without an assignment, arguably the bank would be entitled to all proceeds from the milk sales because there would be no payment obligation for waiver of its lien. However, reviewing the correspondence and documents sent to the dairy, the only reasonable construction is that the bank was demanding payment of $4,333 per month in lieu of receiving the Bonneprises' milk and all proceeds arising from its sale. Thus, we hold that the bank adequately informed the dairy of "any payment obligations . . . as conditions for waiver" under § 1631(e).

Section 1631(e) requires that the notice be given within one year before the sale of the farm products. The bank's notice was given in late August. The Bonneprises began selling their milk to the dairy earlier in August. Thus, the notice was given before the September, October and November sales, but not before the August sales. Consequently, we hold that the bank's notice was timely only as to the September, October and November milk sales, covering the October, November and December proceeds. We therefore reverse that portion of the judgment pertaining to the August milk sales and September proceeds.

In addition to proper notice, § 1631(e) requires that the buyer failed to perform the payment obligations of the secured party. At no time did the dairy make a payment of $4,333, or any other amount, to the bank. Thus, we conclude that the dairy, having proper notice of the bank's security interest and payment obligations as conditions for waiver for the September, October and November milk sales, failed to comply with those payment obligations. Consequently, the bank met all the

requirements of § 1631(e), and the dairy takes subject to the bank's security interest.

## CONVERSION

Next, the dairy contends that the bank cannot succeed on its action for conversion because it was not in possession or entitled to immediate possession of the secured property, and because it did not allege in the complaint that the Bonneprises defaulted on their loan. The issue of whether a particular set of facts fulfill a particular legal standard is a question of law that we review de novo. *State v. Trudeau,* 139 Wis. 2d 91, 103, 408 N.W.2d 337, 342 (1987). An action for conversion is the proper means for a secured party to enforce its security interest against a transferee. *United States v. Fullpail Cattle Sales,* 640 F. Supp. 976, 980 (E.D. Wis. 1986) (applying state law). Conversion is the wrongful or unauthorized exercise of dominion or control over a chattel. *PCA v. Equity Coop Livestock Sales Ass'n,* 82 Wis. 2d 5, 10, 261 N.W.2d 127, 129 (1978). A plaintiff in a conversion action must prove that he was in possession of or entitled to immediate possession of the chattel that was converted. *Id.*

The bank did not receive the August payment from the Bonneprises' milk sales. Thus, as of August, the Bonneprises were in default on their payments and, under sec. 409.503, Stats.,[2] the bank had the right to immediate possession of the secured property. The bank established that the Bonneprises had defaulted on their

[2]Section 409.503 states in part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral."

required payments from August through December. Thus, we conclude that the bank was entitled to immediate possession of the Bonneprises' milk proceeds, and the dairy wrongly exercised control over them by not giving the required proceeds to the bank.

Finally, we reject the dairy's argument that the bank's action for conversion is fatal because the complaint did not allege that the Bonneprises had defaulted. In Wisconsin, a notice pleading state, the complaint is not required to state all ultimate facts constituting each cause of action. *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 24, 288 N.W.2d 95, 98 (1980). The complaint alleged that the bank gave the dairy notice of its secured position, that the dairy received proceeds in excess of its demand for $4,333 per month and that the dairy converted milk proceeds belonging to the bank. Thus, the pleadings were sufficient to allege an action for conversion, and they need not allege specifically that the Bonneprises defaulted.

Because we conclude that 7 U.S.C. § 1631 preempts sec. 409.307, Stats., and § 1631 applies to the facts in this case, we need not consider the dairy's argument that the trial court's decision was contrary to equity, fairness and the policy behind § 1631. Therefore, we hold that the bank is entitled to recover the proceeds from milk sales in September, October and November, plus interest. The matter is therefore remanded to the trial court to modify the judgment consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. No costs to either party.