ALLIED INSURANCE CENTER, INC., and Kliebhan Insurance Agency, Inc., Plaintiffs-Respondents,

MILWAUKEE MUTUAL INSURANCE COMPANY, Involuntary-Plaintiff-Respondent,

AMERICAN GASKET, Intervening-Plaintiff-Respondent,

v.

WAUWATOSA SAVINGS & LOAN ASSOCIATION, Defendant-Appellant.†

Court of Appeals

*No. 95–0786. Submitted on briefs November 7, 1995.—Decided February 27, 1996.*

(Also reported in 546 N.W.2d 544.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Sjostrom & Associates*, with *Kevin J. Sjostrom*, of Brookfield.

For the plaintiffs-respondents the cause was submitted on the briefs of *Frenn Law Office, S.C.*, with

371

*Thomas L. Frenn*, of Milwaukee; and of counsel: *Schulz & Duffey, S.C.*, with *Daniel J. O'Brien*, Milwaukee; *Paul J. Polaski*, Brookfield; and *D. Sean O'Lochlayne* (for involuntary-plaintiff-respondent), Milwaukee.

For the intervening-plaintiff-respondent the cause was submitted on the briefs of *Kuchler Law Offices*, with *Gerard F. Kuchler*, of Waukesha.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Wauwatosa Savings and Loan Association appeals from the trial court's award of summary judgment on liability to Allied Insurance Center, Inc., and to Kliebhan Insurance Agency, Inc. The trial court concluded that Wauwatosa acted in a commercially unreasonable manner by accepting improperly indorsed[1] checks, payable to the insurance agencies, for deposit into the personal checking account of Thomas Landisch, an employee of the agencies. The trial court thus barred Wauwatosa from raising affirmative defenses to liability. Wauwatosa also appeals from the judgment, following a court trial, awarding American Gasket, a payor or drawer of some of the checks, $20,799 in damages.

This case presents two issues: (1) whether Wauwatosa, the collecting or depositary bank, acted in a commercially unreasonable manner as a matter of law, thereby barring its assertion of affirmative defenses to liability; and (2) whether American Gasket, the payor or drawer of some of the checks, was properly allowed

---

[1] The "i" spelling is generally used in this opinion, since that follows the U.C.C. and the Wisconsin version of the U.C.C. The "e" spelling is used in some instances where that version of the word is contained in a quoted statement of a court or some other party.

to recover against Wauwatosa instead of being required to seek recovery directly against its own payor bank. On both issues, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

Between 1988 and 1991, Landisch was an insurance agent for the Allied and Kliebhan insurance agencies. When Landisch would make a sale, he would collect a check from the customer payable to Allied, Kliebhan, or to some variant of the agencies' names.[2] Then, without authority from either Allied or Kliebhan, Landisch indorsed the checks and either cashed them or deposited them into his own checking account at Wauwatosa. After depositing the checks, Landisch would arrange to pay the customers' premiums on installment plans using cash, personal checks or cashier's checks drawn by Wauwatosa. Landisch cashed or deposited into his personal account approximately 106 checks to Allied and/or Kliebhan totalling approximately $300,000. There was no evidence in the summary judgment submissions that Allied or Kliebhan had a banking relationship with Wauwatosa Savings.[3]

It is undisputed that representatives from Wauwatosa never inquired of Allied or Kliebhan whether Landisch had authority to indorse or negotiate checks payable to Allied or Kliebhan. Further, representatives from Wauwatosa stated in their depositions, submitted in support of Allied and Kliebhan's summary judgment motion, that tellers should not have accepted checks

---

[2] At some point Allied and Kliebhan merged.

[3] The lack of banking relationship between Wauwatosa and Allied or Kliebhan was confirmed at the trial on damages.

payable to the agencies for deposit in Landisch's personal account or for cash, without having Landisch indicate his authority as either "owner" or "agent" on the check. Additionally, head tellers from Wauwatosa affirmed that "[c]hecks payable to corporations or businesses should never be cashed by a teller but rather accepted only for deposit to the corporation's or business's account."

Allied and Kliebhan filed suit against Wauwatosa, alleging causes of action for conversion under § 403.419, STATS., breach of warranty under § 404.207, STATS., and negligence.[4] Allied and Kliebhan moved for summary judgment on liability against Wauwatosa, requesting that the trial court conclude that Wauwatosa converted the proceeds of checks payable to Allied and Kliebhan and "as a matter of law" failed to act in a commercially reasonable manner. Additionally, Allied and Kliebhan requested that the trial court bar Wauwatosa from asserting affirmative defenses to the conversion claim. Wauwatosa argued that Landisch had been acting with apparent authority, that Allied and Kliebhan ratified Landisch's conduct, and that Allied and Kliebhan were estopped from recovering. The trial court granted Allied and Kliebhan's motion, stating:

> The rule of law is, barring exceptional circumstances, that if a bank doesn't inquire when an individual cashes a check made payable to a corporation and then deposits the money into his

---

[4] Milwaukee Mutual Insurance Company was named as an involuntary plaintiff due to its subrogated interest in the amount of $50,000 as Allied and Kliebhan's employee dishonesty insurer.

personal account, it is guilty of an unreasonable commercial banking practice *as a matter of law.*

The trial court barred Wauwatosa from asserting affirmative defenses in support of its claim that it acted with commercial reasonableness, stating:

> The duty of a commercial institution such as Wauwatosa to not allow individuals to cash or deposit into their personal accounts corporate checks is so straightforward and basic (as evidenced by the words of its own tellers) that Wauwatosa could not rely on the plaintiffs' failure to contact it . . . . Wauwatosa cannot put the cart before the horse—it was their duty to contact the plaintiffs re[garding] Landisch's actions, not vice versa.

## II. STANDARD OF REVIEW

Section 802.08, STATS., governs summary judgment methodology, and we apply that methodology in the same manner as the trial court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Section 802.08(2) states that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We first examine the pleadings to determine whether they state a claim for relief. *See Green Spring Farms,* 136 Wis. 2d at 315-317, 401 N.W.2d at 820-821. If the pleadings state a claim and the responsive pleadings join the issue, then we examine the summary judgment submissions to determine whether a genuine

issue of material fact exists or whether either party is entitled to a judgment. *Id.*

█

Additionally, resolution of this appeal requires interpretation and application of various sections of Wisconsin law adopted from the Uniform Commercial Code. Thus, we employ a *de novo* review. *See Wilson v. Waukesha County*, 157 Wis. 2d 790, 794, 460 N.W.2d 830, 832 (Ct. App. 1990) (statutory interpretation and application subject to independent appellate review).

## III. THE U.C.C.'S COMMERCIAL UNREASON-ABLENESS STANDARD AND AFFIRMATIVE DEFENSES

Section 403.419(1)(c), STATS., provides that an instrument is converted when it is paid on a "forged" or unauthorized indorsement.[5] Subsection three of § 403.419 further states that a collecting or depositary bank[6] is not liable in conversion to the true owner of an instrument "in conversion or otherwise . . . beyond that amount of any proceeds remaining in his or her hands" if the bank dealt with the instrument or its proceeds on behalf of one who was not the true owner provided the bank "has [acted] in good faith and in accordance with the reasonable commercial standards applicable" in

---

[5] *See Aetna Casualty & Sur. Co. v. Helper State Bank*, 630 P.2d 721, 725 (Kan. App. 1981); 6A RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-419:27 ("There is no distinction between an unauthorized indorsement and a forgery. They are synonymous for the purpose of U.C.C. § 3-419." (Footnotes omitted.)) & § 3-419.71 (1993 rev. ed. & Oct. 1995 supp.); *see also* HENRY J. BAILEY & RICHARD B. HAGEDORN, BRADY ON BANK CHECKS § 28.2 (7th ed. 1992).

[6] *See* § 404.105(1) & (2), STATS., defining "collecting" and "depositary" banks.

that business. Section 403.406, STATS., provides that "any person who by his or her negligence substantially contributes . . . to the making of an unauthorized signature is precluded from asserting . . . lack of authority against a . . . payor who pays the instrument in good faith and in accordance with the reasonable commercial standards . . . of the payor's business." Additionally, § 403.404(1), STATS., in part provides that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless the person whose name is signed ratifies it or is precluded from denying it."

Wauwatosa contends that it cannot be liable for conversion unless there is an "unauthorized signature" constituting a "forgery." *See* § 401.201(43), STATS. (defining "unauthorized signature"). Wauwatosa argues, therefore, that if Landisch's signatures were, in fact, authorized, then it would not be liable for conversion under § 403.419, STATS. Thus, Wauwatosa maintains its various affirmative defenses must be considered in determining whether it acted in a commercially unreasonable manner.

Wauwatosa's summary judgment submissions included materials to establish that Allied and Kliebhan knew that Landisch was not paying premiums with the checks from customers, but rather, was paying premiums with checks drawn by Wauwatosa. Wauwatosa claims that Allied and Kliebhan knew that Landisch was negotiating the checks made out to the insurance agencies. Wauwatosa points to a discussion Landisch had with Harry Polaski, chief executive officer of Allied and an officer and director of Kliebhan, in which Landisch confessed to taking a customer's premium check and depositing into his own account. Wauwatosa also contends that because Allied and

Kliebhan were receiving checks from Wauwatosa payable to them, they knew of Landisch's improper conduct.

Thus, Wauwatosa would have us address the issue of commercial unreasonableness *vis-a-vis* its affirmative defenses in a "which came first—the chicken or the egg?" query. The recent federal appellate decision in *In re Lou Levy & Sons Fashions, Inc.*, 988 F.2d 311 (2nd Cir. 1993), however, is persuasive authority that rejects the very theory on which Wauwatosa bases its argument. Reviewing a factual background nearly identical to that of the instant case, the Second Circuit Court of Appeals held that commercial reasonableness of the depositary bank was a predicate to application of the New Jersey/U.C.C. counterpart to § 403.404(1), STATS. *Id.* at 314-316. The *Lou Levy* court further held that absent a showing that the bank acted in a commercially reasonable manner, the bank was barred from asserting affirmative defenses. *See id.* at 314. Relying on official comments to the U.C.C., the court applied commercial unreasonableness as a bar to various affirmative defenses, reasoning that there was an "interdependence" of the applicable statutes and that "[i]ndividual sections of the U.C.C. should be interpreted as part of an entire statutory scheme." *Id.* at 314-315; *see also* Wis. Stat. Ann. § 401.102 at 7 (West 1995) (U.C.C. Comments) ("The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole."). The *Lou Levy* court further explained:

> The general principle guiding the U.C.C.'s allocation of losses from forged endorsements on checks is to place the loss on the party in the best position to avoid the loss. As a result, the U.C.C. typically places the burden of loss on the person who dealt with and took the instrument in question from the

forger as "such person is presumed to have been in the best position to thwart the attempted fraud and thereby prevent the loss."

*Id.* at 315 (citations omitted).

The reasoning of *Lou Levy* is consistent with the holding of numerous other cases. *See Aetna Casualty & Sur. Co. v. Helper State Bank*, 630 P.2d 721, 727-728 (Kan. App. 1981); *see, e.g., Hermetic Refrigeration Co., Inc. v. Central Valley Nat'l Bank, Inc.*, 493 F.2d 476 (9th Cir. 1974); *Central, Inc. v. Cache Nat'l Bank*, 748 P.2d 351, 353-354 (Colo. Ct. App. 1987); *Mohr v. State Bank of Stanley*, 734 P.2d 1071, 1077 (Kan. 1987); *Martin Glennon, Inc. v. First Fidelity Bank, N.A.*, 652 A.2d 199, 203-206 (N.J. Super. Ct. App. Div. 1995); *Inventory Locator Serv., Inc. v. Dunn*, 776 S.W.2d 523, 527 (Tenn. Ct. App. 1989); *see also* 6 RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-406:41 (1993 rev. ed.). Thus, the authorities support the proposition that where a collecting or depositary bank accepts checks made payable to a corporate payee for cash or deposit into an individual's personal account without investigating or inquiring of the payee, the bank has engaged in a commercially unreasonable practice as a matter of law and, therefore, the bank is barred from asserting affirmative defenses regarding the corporate payee's own negligence as to liability.[7]

---

[7] In addition to simply asking a corporate payee about a depositor's authority, bank employees could do any number of things including but not necessarily limited to looking at the signature cards for the corporate payee's account(s) or requiring a properly drawn corporate resolution or authorization.

We agree with the trial court's conclusion that Wauwatosa acted in a commercially unreasonable manner as a matter of law. First, the checks being cashed or deposited into an individual's personal account were payable to corporate payees. Second, there was no banking relationship between Allied or Kliebhan and Wauwatosa that indicated any possible confusion regarding different accounts at the same banking institution. Third, it is undisputed that Wauwatosa made no inquiry of Allied or Kliebhan about Landisch's actions. Fourth, according to the summary judgment submissions, Wauwatosa's tellers admitted that cashing or depositing these checks violated Wauwatosa's policy. Finally, the cashing or depositing of these checks was also contrary to general banking custom and practice. *See* HENRY J. BAILEY & RICHARD B. HAGEDORN, BRADY ON BANK CHECKS § 13-9, at 13-26 & § 13.10 (7th ed. 1992); 6 ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-406:41-44 & § 3-419:67; 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 15-5, at 761-762 (3rd ed. and practitioner's ed. 1988).

## IV. THE RIGHT OF THE PAYOR TO RECOVER FROM WAUWATOSA IN A DIRECT ACTION

The original complaint also named as plaintiffs the "Class of Customers of Plaintiffs Allied Insurance Center, Inc., and Kliebhan Insurance Agency, Inc." Wauwatosa moved for an order determining that the case was not proper as a class action and dismissing with prejudice the conversion and breach of warranty claims on behalf of the class of customers. The trial court dismissed the proposed class's conversion claim, reasoning that a plaintiff in a conversion action must

either be in possession of a chattel at the time of conversion or be entitled to immediate possession. *See Production Credit Ass'n v. Equity Coop Livestock Sales Ass'n*, 82 Wis. 2d 5, 10, 261 N.W.2d 127, 129 (1978) (U.C.C. case); *see also Farm Credit Bank of St. Paul v. F & A Dairy*, 165 Wis. 2d 360, 371, 477 N.W.2d 357, 361 (Ct. App. 1991) (U.C.C. case stating, "A plaintiff in a conversion action must prove that he was in possession of or entitled to immediate possession of the chattel that was converted.").[8] The trial court, however, denied

---

[8] This issue was barely discussed below apparently because the parties and the trial court were more concerned about the conflicts issue related to the plaintiffs' attorney representing Allied, Kliebhan and the proposed class. In support of certifying the class, the plaintiffs argued that: there was a conversion; the payors were involved; the payors should thus be brought in under ch. 803, STATS., favoring broad joinder; and, in an argument unsupported by authority and not really developed, the payors had a subrogated interest. Wauwatosa made the argument, which the trial court adopted, that "the members of the proposed customer class, by voluntary delivery of the checks to Landisch, relinquished their possessory rights and any ability to assert a conversion claim." As noted, this was a minor issue, which was not given great attention below.

Contrary to the concurrence's statement of a "general rule" (relying on pre-U.C.C. citations) in support of a drawer/payor's right to bring a direct conversion action against a depositary or collecting bank, the right and remedy of a drawer of a check against the collecting bank under both pre-U.C.C. law and U.C.C. is mixed. *See* J.C. Vance, Annotation, *Right and Remedy of Drawer of Check Against Collecting Bank Which Receives It on Forged Indorsement and Collects It From Drawee Bank*, 99 A.L.R.2D 637 (1965); *see also Perini Corp. v. First National Bank*, 553 F.2d 398, 408 n.12 (5th Cir. 1977) ("there exist substantial questions whether the drawer of a check is a proper plaintiff in a conversion action"); 1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE §§ 15-4 & 15-5 (noting that "[p]re-Code law was divided on

Wauwatosa's motion to dismiss the proposed class's breach of warranty claim. (The negligence claim was not addressed.) Although the trial court eventually rejected certifying the customers as a class, it allowed American Gasket to participate as an intervening plaintiff.

Following a bench trial on damages, the trial court found that $157,577.95 of the proceeds of the checks did not reach the proper parties and, of that amount, $20,778.77 was owed to American Gasket. Wauwatosa argues that American Gasket should not be allowed to recover against it under § 404.207, STATS. Section 404.207 in relevant part states:

**Warranties of customer and collecting bank on transfer or presentment of items; time for claims. (1)** Each customer or collecting

---

whether the drawer may sue in conversion" and criticizing U.C.C. § 3-419 as a 'haphazard' codification of conversion liability," which among other things fails to identify proper plaintiffs).

Additionally, both current Wisconsin case law and comment 2 of § 403.419, STATS. directly reject the concurring opinion's attempt to allow a drawer/payor to bring a direct conversion cause despite lack of possession. First, *Production Credit Ass'n v. Equity Coop Livestock Sales Ass'n*, 82 Wis. 2d 5, 10, 261 N.W.2d 127, 129 (1978), and *Farm Credit Bank of St. Paul v. F & A Dairy*, 165 Wis. 2d 360, 371, 477 N.W.2d 357, 361 (Ct. App. 1991), are more recent U.C.C./conversion cases and thus, more authoritative than pre-U.C.C. cases relied upon by the concurring opinion. Second, comment 2 of § 403.419 states that "[a] negotiable instrument is the property of the *holder*." (Emphasis added.) The definitions of "holder," found in §§ 403.302 & 401.201(20), STATS., do not encompass drawer/payor who relinquished possession. This would be consistent with those authorities stating that the "true owner" under U.C.C. § 3-419 refers to the payee.

bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank *or other payor* who in good faith pays or accepts the item that:

(a) The customer or collecting bank has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(b) The customer or collecting bank has no knowledge that the signature of the maker or drawee is unauthorized . . . and

(c) The item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith:

. . .

2. To the drawer of a draft whether or not the drawer is also the drawee.

(Emphasis added.)[9] Wauwatosa argues that the trial court erred in concluding that American Gasket was an "other payor" under the statute.

Although the Wisconsin statutes and the U.C.C. define what a "payor bank" is, *see* § 404.105(4), STATS., neither the Wisconsin statutes nor the U.C.C. define the term "payor" or "other payor" as it appears in § 404.207, STATS. Further, we have found no post-Code Wisconsin case law addressing this issue.[10] As the par-

[9] We note that this section of the Uniform Commercial Code was revised in 1990. Wisconsin, however, has not adopted the revision.

[10] Wauwatosa argues that *Fidelity & Deposit Company of Maryland v. First National Bank of Kenosha*, 98 Wis. 2d 474, 297 N.W.2d 46 (Ct. App. 1980), addressed this issue. We disagree. Although this case did discuss the definition of "other payor" under § 403.406, STATS., it did not address the term "other payor" under § 404.207, STATS.

ties correctly acknowledge, "[a]lthough the Code does not expressly recognize the right of a drawer to sue a depositary or collecting bank paying under a forged indorsement," 6 ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-419:89, the authorities are divided on whether a drawer/payor can bring a direct action against a collecting bank in a breach of warranty action under U.C.C. § 4-207, and on the various theories under which the drawer/payor could bring such an action.[11] *See Prudential Ins. Co. of America v. Marine Nat'l Exch. Bank*, 315 F.Supp. 520, 521-522 (E.D. Wis. 1970) (drawer/payor could bring direct action against collecting bank); *Sun 'n Sand v. United Cal. Bank*, 582 P.2d 920 (Cal. 1978) (drawer/payor could bring direct action against collecting bank); *Leonard Smith, Inc. v. Merrill Lynch, Pierce, Fenner & Smith*, 495 N.Y.S.2d 769 (N.Y. App. Div. 1985) (payor could not bring direct action against collecting bank); *Life Ins. Co. of Va. v. Snyder*, 358 A.2d 859 (N.J. 1976) (payor could not bring direct action against collecting bank); *Stone & Webster Eng'g Corp. v. First Nat'l Bank & Trust Co. of Greenfield*, 184 N.E.2d 358 (Mass. 1962) (payor could not bring direct action against collecting bank); *see also* 7 ANDERSON ON THE UNIFORM COMMERCIAL CODE §§ 4-207:38-39; BRADY ON BANK CHECKS § 29.26-.27 (7th ed. 1992 & 1995 cum. supp. no. 1); 1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 15-9.

Commentators on the U.C.C. also are divided. Expressing one view, Professors White and Summers contend:

---

[11] Further complicating resolution of this issue, the case law and various treatises sometimes use the terms "payor," "drawer," and "maker" interchangeably.

it seems most unlikely that the Code draftsmen intended the drawer to be regarded as "another payor." Apparently the draftsmen intended that the drawer have a suit against his drawee bank for improper payment and that the drawee should bear the burden of raising and arguing any defense, such as negligence, which would preclude the drawer from asserting forgery or the like. To hold that the warranties in 4-207 flow either directly or under a third-party beneficiary theory to the drawer, is to shift the burden of presenting these defenses to the depositary or other collecting banks who would be likely defendants in such suit. As indicated before, it seems likely that the drawee is in the best position to prove negligence on the drawer's part, that the drawee should therefore be made to do so, and that the drawer has no real complaint if he is limited to a suit against his drawee inasmuch as his own bank is likely to be a convenient defendant located in his own home town. For these reasons we think it unfortunate that some courts have extended the 4-207(1) warranty to the drawer.

1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 15-9, at 776-777 (footnotes omitted). Professor Anderson, however, offers the opposing view to accomplish judicial economy and to avoid multiple lawsuits and "the circuity of action requiring the drawer to sue the drawee bank which would then sue the collecting bank on its transfer warranty." 6A ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-419:89; 7 ANDERSON ON THE UNIFORM COMMERCIAL CODE § 4-207:38.

■ We conclude that allowing the drawer to be an "other payor" able to maintain a direct breach of warranty action under § 404.207, STATS., is consistent with Wisconsin law. Even before adoption of the U.C.C., the

supreme court concluded that "[a]n intermediary bank which receives a check . . . on a forged indorsement and collects it from the drawee is liable to the drawer or owner for his loss." *National Sur. Corp. v. City Bank & Trust Co.*, 248 Wis. 32, 34, 20 N.W.2d 559, 560 (1945). Moreover, § 401.102(2)(a)'s directive that the underlying purpose and policy of Wisconsin's version of the U.C.C. is, among other things, "[t]o simplify, clarify and modernize the law governing commercial transactions," also supports the drawer's opportunity to recover from the collecting bank directly.

In sum, the trial court properly barred Wauwatosa from asserting affirmative defenses to liability in a conversion claim under § 403.417, STATS., and properly granted summary judgment based on Wauwatosa's commercial unreasonableness in allowing a corporate employee to cash or deposit improperly indorsed checks into the employee's personal account. Additionally, American Gasket, as a drawer/payor was properly allowed a judgment against Wauwatosa under § 404.207, STATS.

*By the Court.*—Judgment affirmed.

FINE, J. (*concurring*). I join in the majority opinion except insofar as it holds that § 404.207, STATS., permits the maker of a check, the "drawer," to bring a direct action against a collecting bank.[1] The clear lan-

---

[1] I also do not join in footnote 7 of the majority opinion; I do not believe that its discussion of what Wauwatosa Savings and Loan could have done to prevent the loss is necessary to our decision. Additionally, contrary to periodic language in the majority opinion, under the circumstances here the person or entity writing a check is its "maker" or "drawer"—not its

guage of § 404.207 is to the contrary. Section 404.207 provides, as material to our discussion:

**Warranties of customer and collecting bank on transfer or presentment of items; time for claims. (1)** Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that:

(a) The customer or collecting bank has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and

(b) The customer or collecting bank has no knowledge that the signature of the maker or drawee is unauthorized . . . and

(c) The item has not been materially altered, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith:

. . .

2. To the drawer of a draft whether or not the drawer is also the drawee.

Under this provision, the warranties flow to "the payor bank or other payor who in good faith pays or accepts the item." American Gasket is neither a "payor bank" nor a "payor who in good faith pa[id] or accept[ed]" the check it drew.[2] Thus, in my view, § 404.207 does not apply.[3]

---

"payor." *See* HENRY J. BAILEY AND RICHARD B. HAGEDORN, BRADY ON BANK CHECKS ¶ 1.11 at 1-15 (7th ed. 1992).

[2] As noted in footnote 1, American Gasket is the maker or drawer of the checks at issue in this case.

[3] The cases upon which the majority relies for the proposition that a drawer of a check may recover against a collecting bank under U.C.C. § 4-207 permitted recovery on a third-party

Although I do not believe that § 404.207, STATS., applies to American Gasket's claim in this case, I join in the result because § 403.419, STATS., *does* apply. Section 403.419 provides:

**Conversion of instrument; innocent representative. (1)** An instrument is converted when:

(a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or

(b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it; or

(c) It is paid on a forged indorsement.

**(2)** In an action against a drawee under sub. (1) the measure of the drawee's liability is the face amount of the instrument. In any other action under sub. (1) the measure of liability is presumed to be the face amount of the instrument.

**(3)** Subject to the provisions of chs. 401 to 411 concerning restrictive endorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his or her hands.

**(4)** An intermediary bank or payor bank which is not a depositary bank is not liable in conversion solely by reason of the fact that proceeds of

---

beneficiary theory, thereby recognizing, tacitly at least, that the warranties under § 4-207 do not flow directly to the drawer. *See Sun 'n Sand, Inc. v. United Cal. Bank*, 582 P.2d 920, 928 (Cal. 1978); *Prudential Ins. Co. of America v. Marine Nat'l Exch. Bank*, 315 F. Supp. 520, 521 (E.D. Wis. 1970). The majority here does not rely on the third-party-beneficiary theory.

an item indorsed restrictively (ss. 403.205 and 403.206) are not paid or applied consistently with the restrictive indorsement of an indorser other than its immediate transferor.

As the majority notes, Wauwatosa Savings and Loan Association paid the American Gasket checks "on a forged indorsement," as that term is used in § 403.419. Majority op. at 376 n.5 (" 'There is no distinction between an unauthorized indorsement and a forgery. They are synonymous for the purpose of U.C.C. § 3-419.' ") (quoting 6A RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE §§ 3-419:27 and 3-419:71) (1993 rev. ed. & Oct. 1995 supp.). Further, although § 403.419(3), STATS., limits the liability of a "representative, including a depository or collecting bank" to "the amount of any proceeds remaining" in their hands, that limitation applies only if the "representative" has dealt with the instrument "in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative." We have already determined that Wauwatosa Savings and Loan did not so deal with the checks it accepted from Thomas Landisch and deposited into his account. Thus, in my view, Wauwatosa Savings and Loan is liable to American Gasket in conversion under § 403.419. *See Allied Concord Financial Corp. v. Bank of America Nat'l Trust and Sav. Ass'n,* 80 Cal. Rptr. 622, 624 (Cal. Ct. App. 1969) (alternate holding). This view is consistent with pre-U.C.C. Wisconsin law, *see National Sur. Corp. v. City Bank & Trust Co.*, 248 Wis. 32, 34, 20 N.W.2d 559, 560–561 (1945); *Evenson v. Waukesha Nat'l Bank,* 189 Wis. 170, 174–175, 207 N.W. 405, 415 (1926), and with the general pre-U.C.C. rule elsewhere, 9 C.J.S. *Banks and Banking* § 356 at 738 (1938) ("Generally the drawer of a check can

recover of a collecting bank for its payment and collection of the check on a forged indorsement, as for money had and received or for conversion, provided the drawer shows that he has title to the check or proceeds or the right to possession thereof.") (footnotes omitted).[4]

[4] I do not understand the materiality of either *Production Credit Ass'n v. Equity Coop Livestock Sales Ass'n*, 82 Wis. 2d 5, 261 N.W.2d 127 (1978), or *Farm Credit Bank of St. Paul v. F & A Dairy*, 165 Wis. 2d 360, 477 N.W.2d 357 (Ct. App. 1991), cited by the majority in footnote 8. Neither case concerned either checks or § 403.419, STATS. The majority's footnote 8 also ignores the clear language of § 403.419(1)(c) that "[a]n instrument is converted when . . . [i]t is paid on a forged indorsement." With all due respect, Comment 2 to § 403.419 has nothing to do with this case.